33 C.C.P.A.(Patents)

### Application of COULTER.

### Patent Appeal No. 5143.

Court of Customs and Patent Appeals.

May 7, 1946.

Edmund B. Whitcomb, of Toledo, Ohio, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner requiring division between three groups of claims in appellant's application for a patent for an alleged invention relating to improvements in a signalling system, particularly for vehicles.

The question of the patentability of the claims here on appeal has not been considered by the tribunals of the Patent Office. Accordingly, that question is not before us for consideration.

Group I includes claims 1 to 7, inclusive, and 13. Group II consists of claim 8. Group III includes claims 9 to 12, inclusive.

Claims 1, 8, and 9 are sufficiently illustrative of the claims on appeal. They read:

"1. A signalling system for vehicles, spaced signalling means located at each side of the vehicle body including light sources; tell-tale means remotely positioned from said signalling means; connections between said tell-tale means, light sources and a source of electrical energy; controlling means for said connections including a selector switch having a central position and manually movable to operative positions for establishing a closed circuit through said connection from the source of electrical energy to energize the sources of light positioned on one side of the vehicle to indicate the direction of the turning of the vehicle and a normally open circuit with said tell-tale means; and switching means responsive to a predetermined flow of current in the circuit of said light sources for closing the normal open circuit of said tell-tale means."

"8. In combination, an electrical switching arrangement to establish several circuits including a support; a pivoted arm carried by said support having a central position and movable in opposite directions; a plurality of contacting means movable by said arm; a stationary contact element engaging one of said contacting means in its central position and extending in the path of movement thereof; and stationary contacts adapted to be selectively engaged by said contacting means whereby several circuits are established.

"9. A relay for a circuit indicating means arranged for intercalation in a wiring harness including a hollow housing; a frame in said housing; a stationary contact carried by said frame; an electro-responsive means carried by said frame including a movable contact arranged for cooperative engagement with said stationary contact; a plurality of terminals insulatingly supported in said housing; said housing having a plurality of openings to accommodate portions of the wiring harness extending into said housing; the portions of said wiring harness extending into said housing being connected to said terminals; said wiring harness providing the sole support for said housing."

The references are:

Swartwout, 1,365,127, January 11, 1921;

Tolmach, 1,623,219, April 5, 1927;

Harvey, 2,034,866, March 24, 1936;

Lamb, 2,178,479, October 31, 1939.

It will be observed that claim 1 defines a signalling system for vehicles which includes a manually selective switch mechanism and a relay mechanism, or, as stated in the claim, "switching means responsive to a predetermined flow of current in the circuit of said light sources for closing the normal open circuit of said tell-tale means."

Claim 8 is a subcombination claim and defines the switching mechanism called for broadly in claim 1.

Claim 9 is also a subcombination claim and defines the relay mechanism called for broadly in claim 1.

In requiring division between the three groups of claims, the Primary Examiner in his statement to the Board of Appeals stated that the signalling system defined in group I belongs to a well-established class of invention, and is so recognized in the art as is clearly shown by the claims in the patents to Swartwout and Tolmach.

With regard to group II (claim 8), the examiner stated that the claim "reads on

the manual two way or double throw switch 69 of Fig. 5. That the switch is not so highly specialized as to be of doubtful use in any other than the applicant's signalling system is too obvious to require extended comment. Simple double throw switches of the type are very old and in common use in many and various situations * * *," and that the patent to Harvey, although disclosing a somewhat specialized switch, had general utility and belonged to a "well established class of invention, distinct from any system in which the switch might be used."

As to group III, of which claim 9 is illustrative, the examiner stated that it defines a relay mechanism which has various uses and is well recognized in the art as an established class of invention, and that the function of the relay defined in group III is "the simplest that a relay can have." The examiner referred to claim 4 in the Lamb patent which, he stated, "includes sufficient supporting means to constitute 'a unitary assembly,' which is strictly analogous to details providing support by the wiring harness in the present claims."

The examiner then said that applicant's relay mechanism with its support had "general application in many systems, for instance the ignition harness on an airplane or a submarine, or even for the control of a pilot light in a fire alarm system * * *"; that the switch mechanism defined in group II and the relay mechanism defined in group III could be used in many systems without any change in the structure of those mechanisms; and that "therefore there is no novel or peculiar relation making the switch and relay necessary parts of the system of group I."

In affirming the decision of the examiner, the Board of Appeals stated that the switching mechanism, defined in claim 8, and the relay mechanism, defined in claim 9, were capable of general use and were not limited to applicant's signalling system as clearly disclosed by the patents to Harvey and Lamb, and that the signalling system defined in claim 1 was a well-recognized separate and independent subject of invention as disclosed in the patents to Swartwout and Tolmach.

In replying to the argument of counsel for appellant that appellant disclosed in his application a unitary signalling system and that, therefore, the three groups of claims should be considered together as combination and subcombination claims, the board stated that many complex mechanisms, including those in the electrical arts, employ subcombinations that are recognized as separate and independent subjects of invention; that switches and relay mechanisms in electrical systems have long been recognized as separate subjects of invention; and that, although the classification in the Patent Office was not conclusive on the question of division, nevertheless, division was required where subcombinations such as electrical switches and relay mechanisms are separate subjects of invention. The board further stated:

"Another point urged by applicant is that in this case the sub-combination or subjects of invention, that is, the switch and relay are such that the system must depend upon them and that they mutually contribute to producing a certain result. It is not apparent but that other switches and relays could be used in applicant's system and the specific switch and relay do not necessarily contribute to produce a single result any more than other specific forms could accomplish."

Counsel for appellant contends that the Patent Office tribunals have improperly construed the provision of rule 41 of the Rules of Practice in the United States Patent Office, 35 U.S.C.A.Appendix, which, so far as material here, provides that "Two or more independent inventions can not be claimed in one application; but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application," and it is urged by counsel that where separate inventions actually depend upon each other and contribute to produce a single result, it is immaterial under the rule that the separate inventions might be independently used, and, as he states, "therefore dependent on other combinations, or that the separate inventions might not also mutually contribute in other environments to *other* results." (Italics quoted.)

It is further contended by counsel for appellant that as the switching mechanism, defined in claim 8, and the relay mechanism, defined in the claims of group III, are necessary to the operation of the signalling system for vehicles defined in the claims of group I, and as appellant's disclosure is an "inventive conception of a complete, unitary, successfully operating, directional signal system and each part thereof is essential to every other part" and dependent thereon, appellant is entitled to have the subject matter defined in the three groups of claims considered in the same application.

It is not questioned here by counsel for appellant that the three groups of claims are separately and independently classified in the Patent Office, or that the switch mechanism, defined in claim 8, and the relay mechanism, defined in the claims in group III, could be used in other systems without any change in the structure of those mechanisms.

There is no evidence whatsoever of record to warrant a holding that the tribunals of the Patent Office were in error in stating that the switch mechanism and the relay mechanism defined in groups II and III, respectively, could be used in many other systems, or that the combination called for by the first group of claims and the subcombination called for by the second and third groups of claims are recognized in the art as separate and independent subjects of invention as disclosed in the patents of record.

The quoted provisions of rule 41, supra, and issues similar to those raised here by counsel for appellant have been fully considered by this court in several cases. See In re Pedersen, 73 F.2d 928, 22 C.C.P.A., Patents, 788, and cases therein cited; In re Ferenci, 83 F.2d 279, 23 C.C.P.A., Patents, 1023; In re Moss et al., 101 F.2d 536, 26 C.C.P.A., Patents, 861; In re Freeman, 104 F.2d 187, 191, 26 C.C.P.A., Patents, 1265.

In the last cited case, we quoted the following excerpt from our decision in the case of In re Ferenci, supra:

"It will be noticed in the above quotation (from the decision of the Board of Appeals) that there are two main reasons which brought the board to the conclusion that the inventions were so unrelated as to prevent their being included in the same application: First, agreeable to the holding in In re Creveling (46 App.D.C. 536) (although not cited), it is pointed out that the wrapping material severing means and the bread slicing machine 'have each acquired a distinct status in the art'; second, it is intimated that the details of the subcombination claims 'are adapted for use generally in other structures or combinations and their functions are well understood.'

"While we approve of the application of these two considerations in determining when two or more inventions may be 'related' in respects heretofore referred to, we are not willing to say that the application of one or both of them may in every instance be determinative of the question. We think, however, that where a subcombination has acquired an independent status in the art, as is evidenced by patents being granted for the subject-matter of such subcombination, and a separate examining division in the Patent Office is set up for its consideration, and where the subject-matter of such combination is a matter of common understanding and is adapted for substantial, practical uses other than in, and independent of, the general combination, it ordinarily would not be regarded as being so related to the general combination as to entitle it to be claimed in the same application with the combination to which it belonged.

"Obvious difficulties in making application of the foregoing principles in every instance where the question might arise would suggest that they should not be regarded as inflexible and indispensable criteria. In some of the cases involving this question, there might be no factual basis for the application of all the above principles, and yet the subcombinations there involved might clearly be unrelated to the other claimed subject-matter.

"The views above expressed are, in part, very clearly and succinctly stated at page 465 of the Journal of the Patent Office Society, Vol. 1, No. 9, in an article by C. H. Pierce, and we quote therefrom as follows: '* * * it is believed to be the more

modern doctrine and practice that where an element or subcombination which is claimed in the same case with a combination of which it forms a part, even if that combination be new, is clearly capable of use apart from the combination and in other relations and not restricted in its design, operation and capabilities to use therewith, and if in addition there is a developed state of the art in relation to it, constituting a different field of activity and search, division may be required without awaiting determination of the novelty of the combination.' * * *" and held, in accordance with the statement of the law as announced in the quoted excerpt, that as the subcombination claims there involved were not "restricted either in design or operation to any particular machine" and as they involved "separate and independent inventive acts," they were "not so related as to entitle them to be claimed in the same application."

■ It will be observed that in the Ferenci case, supra [83 F.2d 284] we said, in substance, that where subcombinations had acquired an independent status in the art as evidenced by issued patents and were separately classified in the Patent Office, as in the instant case, and where such subcombinations were adapted for "practical uses other than in, and independent of, the general combination," claims to such subcombinations would not ordinarily be considered "as being so related to the general combination as to entitle [them] to be claimed in the same application with the combination to which [they] belonged."

Counsel for appellant also contends that claim 8, by virtue of the language contained therein, actually includes the relay, and that, therefore, "the whole purpose of applicant's system is involved in" that claim. In support of his argument, counsel relies upon the last clause in that claim which reads: "and stationary contacts adapted to be selectively engaged by said contacting means whereby several circuits are established." Counsel concedes that the quoted language in the claim is broadly worded. He contends, however, that it "inferentially, but nevertheless, actually" includes the relay.

The purpose of a switching mechanism is to establish circuits, and we are of opinion that the quoted excerpt from claim 8, relied upon by counsel, cannot properly be held to define a relay mechanism.

It is further contended by counsel for appellant that the claims in group III call for the relay therein defined arranged for connection in a wiring harness, portions of the wiring harness extending into a hollow housing and providing the sole support therefor; that the "combined relay and housing combination" called for by quoted claim 9 includes the "wiring harness which constitutes the elements of the connections of the system claimed in" quoted claim 1 of group I; and that, therefore, the signalling system defined in claim 1 and the relay mechanism defined in claim 9 depend upon each other.

Assuming that the wiring harness, referred to in quoted claim 9, is a positive element of that claim, and that it is the sole support for the housing of the relay mechanism, there is nothing in the claim to indicate that the wiring harness is the connection between the source of electrical energy and the light sources as argued by counsel for appellant. The most that the claim calls for in that respect is that the wiring harness is connected to the terminals of the relay and is the sole support for the housing of the relay.

We are in agreement with the statement contained in the decision of the Primary Examiner, hereinbefore quoted, that claim 4 of the Lamb patent includes supporting means and defines a "unitary assembly" which is analogous "to details providing support by the wiring harness in" quoted claim 9, and we think it is evident that the subject matter of claim 9 belongs to the same class of invention as that claimed in the Lamb patent.

Counsel for appellant states in his brief that the third group of claims calls for "the particular type of relay and supporting means therefor." No contention is made by counsel that claims 10, 11, and 12 of that group differ in any material respects from the subject matter called for by quoted claim 9.

It is unnecessary that we refer to other arguments presented here by counsel for appellant, as it is evident from the facts of record that the three groups of claims are for separate and distinct inventive subject matter, and that the mechanisms defined by the subcombination claims in groups II and III are not so co-related or interdependent, either in design or operation, to each other or to the signalling system for vehicles defined by the combination claims in group I as to entitle the subcombination claims to be claimed in the same application or in an application with the combination claims.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.