36 C.C.P.A. (Patents)

### Application of YOUNG et al.
### Patent Appeal No. 5544.

United States Court of Customs and Patent Appeals
March 1, 1949.

Charles C. Scheffler, Rudolph S. Nelson and Donald C. Harrison, all of New York City (Eugene L. Greenewald, of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the Primary Examiner's requirement of division between a group consisting of two claims for a composition of matter (defined as a copper-chromium mixed oxides hydrogenation catalyst), on the one hand, and, on the other hand, a group of seven claims for an alleged improvement in a process for making phenyl methyl carbinol, one of the steps of which is the use of the catalyst so described.

The article claims which appellant elected to prosecute were finally allowed by the examiner. They are numbered respectively 2 and 3; the process claims 7 to 13, inclusive. While the merits of the claims are not involved in this appeal, we think it may be conducive to clarity to reproduce one of each group, and 2 and 7 are selected for this purpose.

"2. A copper-chromium mixed oxides hydrogenation catalyst in which the chromium is present in a ratio, computed on a metal basis, from about 9 to 15 parts chromium per 100 parts copper, by weight.

"7. A method for the production of phenyl methyl carbinol by reduction of acetophenone which comprises introducing hydrogen into acetophenone under pressure

in the presence of a catalytic amount of a copper-chromium mixed oxides hydrogenation catalyst in which chromium is present in a ratio, computed on a metal basis, from about 7 to 25 parts chromium per 100 parts copper, by weight."

Appellants' application was filed October 14, 1943. It embraced 14 claims which were divisible into three groups. Claims 1, 2, and 3 (group I) were for the catalyst; 4, 5, and 6 (group II) for the method of producing the catalyst; and 7 to 14, inclusive, (group III) for a process of producing phenyl methyl carbinol, use of the described catalyst being one of the steps defined in the process.

During the prosecution of the application before the examiner claims 1 and 14 were cancelled and the article claims 2 and 3, after first being rejected, were finally held allowable as hereinafter detailed.

The first action in the Patent Office shown by the record before us appears in an official letter of the examiner, under date of April 27, 1944, in which it was stated that the application had been examined and that division was required. There was no decision upon the merits of any of the claims. The following patents were listed, not as prior art references on the question of patentability, but as relating to the question of separate classification of the different inventions held by the examiner to be covered by the claims: Montonna, 1,416,-859, May 23, 1922, 260–613; Amend, 2,040,-913, May 19, 1936, 260–618; Groll, 2,217,-865, October 15, 1940, 252–232; Ruthruff, 2,247,820, July 1, 1941, 252–254; Engel, 2,-258,111, October 7, 1941, 252–254.

In the course of the letter the examiner said: " * * * Catalyst of group I may be prepared by other processes than that claimed in group II and it can be employed for catalytic reduction of other substances than that claimed in group III. The process of reducing acetophenone is independent of a process for producing a hydrogenation catalyst. The independence of these three groups is well recognized by workers in the art and the consequent classification of patents obtained by them as illustrated in the above cited patents. Group I is classified in class 252, subclass 232 illustrated by

Groll patent. Group II is classified in subclass 254 of the same class as illustrated by patents to Ruthruff and Engel. Group III is classified in Class 260 subclass 618 as illustrated by Montonna and Amend patents."

From the foregoing, one may observe that the examiner required a "three-way" division.

Claim 14 was rejected in that letter "as obviously non statutory," and was cancelled by an amendment proffered on behalf of appellants in a communication dated July 19, 1944, responding to the official action of April 27, 1944.

In that communication appellants challenged the requirement for division as being improper, alleging also that "even were it proper, it is premature." Those questions were argued at some length and certain assurances, hereinafter referred to, requested, after which it also was requested that, in the event the examiner adhered to his requirement for division, the question be submitted to the Examiner of Classification for a ruling. It was further said: " * * * In the event that the Classification Examiner fails to disapprove the requirement for division, but only in such event, applicant chooses for first prosecution on the merits, claims to the hydrogenation catalyst as represented by claims 1, 2 and 3 of the Examiner's classification. This election is made at this time lest the foregoing amendment be considered unresponsive and does not in any sense constitute a waiver of applicants' right to appeal from the requirement. It is to be understood, also, that in thus expediting the prosecution of the case on its merits, applicants shall have the right to retain the claims to the process of hydrogenating and to the process of making the catalyst until appeal has been had from the requirement to divide without prejudice to applicants' right to file one or more applications on the subject matter thereof."

The examiner adhered to the requirement for a "three-way" division, and in an official letter dated April 25, 1945, stated, in substance, that the question had been submitted to the Examiner of Classification who approved the requirement as made by the examiner. The letter then discussed

claims 1, 2, and 3 on their merits and rejected them on prior art, citing three patents as references. In view of the fact that claim 1 was subsequently cancelled and the rejection of claims 2 and 3 on prior art withdrawn, the references need not be listed nor commented upon here further than to say that one of them was a patent to ——— Jones, to which we hereinafter refer. The letter also recites the rejection of claims 4 through 14 (although 14 seemingly had been cancelled already) on the ground of misjoinder.

The next Patent Office action is recited in a letter of the examiner dated September 12, 1945, which begins "Responsive to amendment filed August 31, 1945." There is no amendment of that date in the record, and we are unable definitely to determine from the examiner's letter what it was or what he did with it, if anything. The letter recites that claim 1 had been cancelled (and possibly that was the amendment referred to); that claims 4 through 14 were rejected on the ground of misjoinder; that claims 2 and 3 stood rejected on the prior art previously cited; and that the rejection was final.

Appellants, on December 4, 1945, filed a petition to the Commissioner of Patents, presenting four alternative requests for action argued to be their right. Inasmuch as all the pertinent questions raised in the petition are discussed hereinafter to the extent deemed necessary, we need not set them forth at this point. The petition was denied in a decision by the Supervisory Examiner dated January 16, 1946.

January 17, 1946, appellants filed a communication "In response to the Official action dated, September 12, 1945," alleging that the final rejection made on that date was premature, and requesting "that it be withdrawn for further consideration of the claims on the merits." Clarification of certain of the phraseology of the examiner also was requested.

There was filed with the communication an affidavit subscribed and sworn to by all the appellants, in which, under rule (then No. 75) of the Patent Office, they "swore back" (particularly so far as claims 2 and 3 were concerned, claim 1 having been cancelled previously) of the Jones patent, one of the references cited by the examiner in the rejection of article claims 1, 2, and 3, as hereinbefore stated. This patent was not included in the record brought before us (it was unnecessary to include it in view of the final action taken), but the affidavit states that it was patent 2,372,084 issued March 20, 1945, upon an application filed October 24, 1942.

In an action of March 11, 1946, the examiner stated that the letter and affidavit of appellants filed January 17, 1946, had been considered but that they did not put the case in condition for allowance, and in "advisory remarks made without in any way withdrawing the final rejection" said, (a) that in view of the affidavit "claims 2 and 3 are held allowable," and (b) that claims 4–14 (evidently overlooking the fact that 14 previously had been cancelled and was no longer in the case) were still regarded as "properly rejected upon the grounds of misjoinder of invention."

In the meantime, on March 6, 1946, appellants had taken appeal to the Board of Appeals, filing therewith "the specific points on which appeal is taken." This was five days prior to the action of the examiner in which he held claims 2 and 3 allowable, and in the appeal to the board it was assigned as error that those claims were rejected on the prior art references cited. They also were discussed in appellants' brief before the board which was made part of the record before us.

The official statement of the examiner, following the appeal to the board, however, while stating that claims 2 and 3 "are involved in the appeal," also stated that they had "been indicated as allowable." So, those claims were not before the board upon their merits, and it had no reason to consider them, and did not consider them, except for the purpose of determining the relation between the catalyst and the two respective processes involved.

As a result of its consideration, the board reversed the examiner's requirement for division between group I (claims 2 and 3 for the catalyst) and group II (claims 4, 5, and 6 for the method of making the catalyst), holding that the method of the claims

in group II "inevitably produces the specific product" defined in group I.

Relative to the requirement for division as applied to claims 7 to 13, inclusive, the board said:

"With regard to the claims drawn to the method of producing the carbinol by reduction of acetophenone, using the specific catalyst, we are of the opinion that the requirement for division should be sustained, for the same reasons stated by this Board in the Ruthruff case, 64 USPQ 130. It is quite obvious that the method for the production of the catalyst is distinct from the method for the production of the carbinol. As was stated in the Ruthruff case, two methods which involve distinctly different operations cannot be made into one and the same process simply because of matter that may be common to both, since the substance of any process claim is determined by the operations positively recited therein.

"The catalyst itself may have other uses, and the mere fact that the particular catalyst claimed in this case finds especial use in a process for the production of phenyl methyl carbinol by reduction of acetophenone does not establish that it is the only use to which the catalyst can be put. It is highly improbable that, as a reduction catalyst, that is the case. In fact, claim 2 is drawn broadly to a copper-chromium mixed oxide hydrogenation catalyst which is in no way limited to a specific use."

The foregoing are the only reasons specifically given by the board for its action. It embraces the same thought relative to claims 7 to 13, inclusive, as that expressed in different phraseology by the examiner, who also seemingly based his action upon the additional ground that the different alleged inventions received separate classification in the Patent Office. The board made no reference to this ground, but the presumption is that it approved it. Concededly, however, that ground, standing alone, is not conclusive, and we find it unnecessary to discuss it further than to say that we should hesitate to sustain a requirement of division in this case solely upon that ground. Cases may arise, of course, in which such action may be proper. It has been the consistent policy of the courts to recognize that a certain discretion should be and is lodged in the tribunals of the Patent Office relative to the question of division. In re Ferenci, 83 F.2d 286, 23 C.C.P.A., Patents, 1095; In re Moss et al., 101 F.2d 536, 26 C.C.P.A., Patents, 861.

The serious situation for appellants here, as we view it, is their failure plainly to challenge and effectively to disprove the assertions of the tribunals of the Patent Office to the effect that the catalyst, as described in claims 2 and 3 respectively, the use of which constitutes a step in claims 7 to 13, inclusive, is limited to that specific use, or, we may add, their failure to show that the catalyst itself has no use other than that defined in the claims. The burden rested upon appellants in those respects after the examiner had made his initial ruling.

This court has uniformly sustained requirements of division between claims made to an element susceptible of use in different systems or combinations, on the one hand, and claims to one such system or combination, on the other hand. In re Ferenci, 68 F.2d 737, 21 C.C.P.A., Patents, 856; In re Goerke et al., 83 F.2d 294, 23 C.C.P.A., Patents, 1093; In re Ferenci, 83 F.2d 279, 23 C.C.P.A., Patents, 1023; In re Ferenci, 83 F.2d 286, 23 C.C.P.A., Patents, 1095; In re Coulter, 155 F.2d 271, 33 C.C.P.A., Patents, 1088.

The last cited case, while the claims related to entirely different subject matter (alleged improvements in a signalling system) from the claims of the instant case, was somewhat analogous to the instant case in that it presented a "three-way" division requirement involving claims for a signalling system or combination and for two distinct subcombinations.

It was pointed out there that counsel for the applicant did not question that the three groups of claims were separately and independently classified in the Patent Office; also, that it was not questioned that the signalling system was a well-recognized and independent subject of invention, nor that the respective subcombinations of switch

and relay could be used in other systems without being altered in structure.

The brief on behalf of appellants is quite critical, particularly of the examiner's decisions, as is their reply brief of the brief of the Solicitor for the Patent Office. The board is also criticized because it refused, in considering a petition for reconsideration of its original holding with respect to claims 7 to 13, inclusive, to discuss certain statements of the examiner. Of this the board said: " * * * With regard to the method of using the catalyst, we held division proper because the claims to the latter method were for a separate invention and gave our reason for so holding. The appeal in this case is from the action of the Examiner requiring division, i. e., from the requirement and not from all the specific reasons which the Examiner advanced to support the same and we do not consider it necessary to discuss all the reasons advanced in the Examiner's Statement."

We do not think the refusal of the board in that respect constituted reversible error.

In connection with the appeal to the board appellants caused to be filed (and this was repeated in the record submitted on the appeal to us) a list of thirty-five or more patents in which both article and process claims were granted. In at least three of the patents, it appears that claims were allowed for (1) a catalyst; (2) a method of making the catalyst; and (3) a method in which the catalyst was used. In the greater number of the patents the claims allowed were limited to the catalyst and the method of making it. In six instances, there are claims for only the catalyst and the method of using it, and in three instances, seemingly there are claims for only the method of making and the method of using. In behalf of appellants, it is said that the list was filed in response to the list filed by the examiner in his first official action to which we have hereinbefore alluded, and in the reasons of appeal to us it was alleged: "11. The Board of Appeals erred in sustaining the Examiner's requirement for division and the rejection of claims 7 through 13 without taking notice of the thirty-five patents in the annexed list wherein joinder was allowed, and the Board of Appeals erred further in not following well-estab-lished practice as represented by said thirty-five patents in the matter of joinder."

We, of course, know nothing of what occurred in the Patent Office by way of evidence or otherwise during the prosecution of the applications upon which the thirty-five patents listed by appellants were based. If any of them were at any time before this court, appellants have failed to advise of that fact.

We do not regard the patents as being relevant in the instant controversy, and we may add that we do not base our decision upon the patents which were listed by the examiner. The rule that the allowance of claims by the Patent Office has no relevancy in the consideration of the question of patentability of claims in another case was stated by us to be elementary in our decision in the case of In re Greider et al., 129 F.2d 568, 29 C.C.P.A., Patents, 1079, 1083. The principle so announced, which was restated, in substance, in our opinion in the case of In re Hirschhorn, 162 F.2d 489, 34 C.C.P.A., Patents, 1156, applies equally in considering the action of the tribunals of the Patent Office in requiring or failing to require division.

Another of the appellants' reasons of appeal reads: "12. The Board of Appeals erred in sustaining the Examiner's requirement for division and the rejection of claim 7 through 13 in the absence of information repeatedly requested, that a divisional application would not thereafter be rejected on the ground that we should not have complied with the requirement for division."

We do not find in appellants' statement of "the specific points on which appeal [to the Board of Appeals] is taken" any assignment of error which seems to cover the matter involved in the foregoing assignment before us, and the board made no reference to it. It does appear to have been presented in the petition to the Commissioner under date of December 4, 1945, hereinbefore referred to, and response was made in the decision of the Supervisory Examiner, who said, inter alia: " * * * nor will any commitment be made as to any future action that may be taken on any divisional application that may be filed."

As a matter of fact, the petition to the Commissioner presented four alternative prayers, each of which was discussed by the Supervisory Examiner in his decision denying them. The brief of the Solicitor for the Patent Office construed appellants' contention to mean that they insisted that "the examiner should not have required division without making a statement that, if the requirement was complied with and a second application was filed, no rejection would be made on the ground of double patenting," and asserts, citing authorities, that "It seems obvious that no such commitment could properly be made."

In a reply brief for appellants, filed by permission of the court, it is said: "Nowhere in the record does it appear that appellants ever requested assurance that a second application, if filed, would not be rejected for "double patenting". What appellants requested was assurance that their claims 7 through 13 would not thereafter be rejected *solely* for the reason that they should not have complied with the Examiner's requirement or that the claims would have been allowable had division not been required." (Italics quoted.)

Whatever may be the proper construction of appellants' petition to the Commissioner in the light of the arguments concerning its various statements, running through much of the record and in the briefs before us, the fact remains that commitments as to future action were, in effect, demanded of the tribunals of the Patent Office as a condition precedent to appellants complying with the requirement for division. The matter is suggestive of a trade or bargain which, in our opinion, the board would have had no authority to make, even if the subject had been presented by appellants' appeal to it, and it had felt disposed to conform.

We deem further discussion unnecessary. We are not convinced, upon the facts here appearing, that it was error to require division between the claims of group I and those of group III.

The decision of the Board of Appeals is affirmed.

Affirmed.