Bland, Judge,
delivered the opinion of the court[1]:
The Primary Examiner of the United States Patent Office, after allowing article claims 10,13, 14, and 16 to 21, inclusive, for a patent relating to infusion packages, or more, particularly tea balls, rejected two article claims, 12 and 15, and all the method claims, 1 to 9, inclusive, and 22. The rejection of the examiner of all the claims involved in this appeal was, upon grounds hereinafter discussed, affirmed by the Board of Appeals, and the applicant has appealed here seeking a revision and reversal of the board’s decision.
During the prosecution of the case certain references were cited against the claims and they were carried forward in the statement of the examiner and the decision of 'the board, but in neither of the decisions do the references form the basis of rejection except as to claims 12 and 15 and it is not deemed necessary to discuss any of them here.
The invention relates to a tea bag and like articles made from an oblong section of filter paper folded upon itself and upon the inside face of which, on the three open sides thereof, there is a thin layer of some thermoplastic material. All three of the coated edges are then sealed together by heat and pressure. A slit is next made along one or more of the edges in the mid-portion of the sealed flange, stopping short of complete severance. By thus slitting the flange at a place within the sealed portion the result is obtained of having the two strip portions which are to be used as a handle .sealed together and *1121 at the same time leaving the closure of the bag intact. The partially-severed strip, when displaced from the plane of said flange, forms a handle for manipulation of the bag when the tea is brewed. A number of different forms are shown in which the handle may take the form of a loop, etc., and the bag may also be made in two parts feo that it maybe separated along a weakened line somewhere in the middle of the whole bag in case only half strength of the tea is desired.
The main controversy and the important question of law involved ;are concerned with the method claims, and we will first dispose of the .appeal as to article claims 12 and 15. There is but little controversy on this subject and since the board’s opinion affirming the examiner’s rejection of these claims on the ground of aggregation and the lack of invention resting in the printed legend, “tea,” on the handle of the bags, especially when the disclosures of Mock and Salfisberg are considered, is so clearly in accordance with well-setttled law we do not feel called upon to discuss this question at length, and its decision as to claims 12 and 15 will be affirmed.
The main issue is of such importance that we feel required to here set out all of the rejected method claims, the necessity for which will .appear as our discussion progresses. They follow:
1. In a method of manufacturing infusion bag packages each made with a sealed marginal closure forming a border, flange, the step of through-splitting a sufficient amount of said flange along a substantial length thereof .to provide a handle solely from a continuous integral segement of said flange when displaced out of the plane of the latter for manipulating said package by the handle during brewing.
2. The method defined in claim 1 in which said step of through-splitting is continued beyond a length necessary to form the segment-handle to a cut termination for eliminating accidental tearing and stabilizing the suspension of the bag by said handle.
3. In a method of making an infusion bag package formed with a closure portion, the steps of heat sealing a marginal area of said closure portion to form a border flange, through-splitting a substantial continuous length of said flange short of complete severance while retaining said sealed closure intact to provide an integral handle when only a portion thereof is displaced from the plane of said flange for suspending said package by said handle in manipulating said package during brewing.
4. The method of manufacturing an infusion package of the character described including the steps of enclosing an essence containing product in a filter sheet material to form a.package with a seam joint closure, and constructing solely from an integral portion of said seam joint closure a dependent elongated handle as and for the purpose described and specified.
5. The method of making an infusion bag package defined in claim 4 including the step of crimping the seam joint closure including the handle forming portion with the ridges produced thereby extending longitudinally said closure and handle to strengthen the structure against tension strains and accidental tearing.
6. A method of manufacturing infusion packages of the character described including the steps of enclosing an essence containing product in a filter sheet *1122 material to form a package with a sealed joint seam closure flange, and through-cutting a mid-portion of the flange wholly within the border of the flange to provide an integral bail-handle segment for suspending the package by said bail-handle segment in manipulating the package during brewing while retaining the sealing of the joint seam closure flange intact.
7. A method of manufacturing infusion packages of the character described including the steps of enclosing an essence containing product in a filter sheet material to form a package with a sealed joint seam closure flange extending more than half way about the periphery of the package through-cutting a mid-portion of the flange wholly within the border of the flange to provide an int egral bail-handle segment displaceable from the plane of said flange for suspending the package by said bail-handle segment in manipulating the package during brewing while retaining the sealing of the joint seam closure flange intact, and shaping 'the ends at the through-cutting to provide terminals for eliminating accidental tearing of the bail-handle segment from the -package.
8. The method of manufacturing an infusion package of the character described including te step of sectionalizing an essence'containing product in a filter sheet material bag, sealing the sections along a border flange to form a seam joint, constructing solely from an integral portion of the seam joint a dependent handle, and weakening a mid-portion of said seam along a line for folding said sections toward each other when suspending the package by the handle during brewing.
9. The method defined in claim 8 in which the step of weakening a mid-portion of said'seam includes perforating said line to provide tearing means for separating the sections for independent use.
22. The method defined in claim 1 in which said step of through-splitting is continued inwardly the edge of the flange to form a “tear-proof” terminal ion end and to provide stabilization to the bag suspension by the handle.
In rejecting these claims the examiner said:
These claims are rejected as being unpatentable since they involve but the obvious method of producing the article. The article may be invention, as indicated by the allowance of article claims, but this does not mean that the method of making the article is patentable. It is thought that any one skilled in the art, having seen the article, would use substantially the same method in producing it. Attention is directed to Ex parte Trevette, 97 O. G. 1173. [First italics ours.].
It will be noted that the examiner, by the rise of the term, Hhe obvious method of producing the article,” implied that there was but one method of doing so. He might have arrived at a different conclusion if he had used the word “an” instead of “the.” The importance of this circumstance will appear later.
It will also be observed that the examiner’s holding as to the method claims was upon the authority of Ex parte Trevette, 97 O. G. 1173, 1910 C. D. 170. The board, however, in its stated grounds of rejection of the claims has departed materially from those of the examiner, and. we must frankly confess we have had some difficulty in arriving at the-real position of the board by reason of the language it used. In considering this decision we feel it necessary to call attention to several features of the language used, and quote the following [italics and numbers by us] :
[1] The objection noted against the appealed claims is that while they are alleged to cover a process no real steps are defined. About all that is said in the *1123 claims is that the article is forinecí so as to have certain structural characteristics. [2] After ¡r careful reading of the detailed description we fail to find any disclosure of procedure followed in making the article. Apparently no special sequence of steps is followed in the making up of the article. |"&1 Just when the charge of tea is placed in the bag is not stated, nor does it appear in the-description when and how the slit is made. [4J It appears to us that whatever patentable merit there may be in this case -resides in the particular concept of the structure and after conception Hie articie of manipulative steps employe,<1 in making it are so simple that, no invention is seen in this feature. It is obvious that bags made from paper by folding a sheet on itself and then sealing the other three sides are very old and common and there is certainly no invention involved' in merely making a slit through one of these sealing edges. For reasons stated, we can see no invention in the process claims.
It will 1)3 noted that the concluding sentence is “For reasons stated,, we can see no invention in the process claims,” and the board at no place cites the T>‘evette case or any of the many other cases having a bearing on the particular question involved. It does not indicate whether or not appellant’s method is the obvious or only way of making-the article.
We are at a loss to know whether or not by language above the board meant to reject the claims on account of defective form (no real steps). If it had been its purpose to do so, surely it would have given more consideration to the question, because if either the specifications or some of the claims are read it will be seen that there are well-defined steps disclosed.
Since this may be regarded as a new ground of rejection, and the board had the right to apply a new ground if it saw fit, it is thought, best to point out that as to claim 1, which apparently, unfortunately,, the board used as illustrative, the claim may be regarded as a one-step claim, and if so there is considerable doubt as to whether it meets the requirements of the law as being in proper form as a true method claim.. More as to this claim and the two dependent claims, 2 and 22, will be stated later herein.
As to the language indicated by did the board intend as a ground, of rejection to hold that the claims were fatally defective because they did not state just when the charge of tea was placed in the bag ? Some of the claims, such as 4, 6, 7, 8 and 9, specifically refer to the step of enclosing the essence containing product. In the light of this circumstance we look upon this statement on the part of the board as not-being a ground of rejection, but if so, an unwarranted one.
As to we interpret the board’s decision as a holding to the effect, although not in definite language and without supporting citation, that the examiner properly rejected the claims for the reasons stated in the above quotation from the examiner’s statement, and we think that the language employed by the board was intended to be another way of stating the law of the Trevette case as applied by the examiner.
*1124 In addition to the above-mentioned features of the board’s decision, it would appear from the last italicised phrase that it was possibly of the opinion that method claims defining a dependent invention and presented in the same application with allowable article claims must involve invention independent of the article. If it was of the opinion that the method claims define only the obvious method, or only method, of making the article, as stated by the examiner, this inference from the said language need not be necessarily drawn.
The Solicitor for the Patent Office here presented the board’s decision to us upon the theory that it affirmed the view expressed by the examiner, though in different language, and that the principles laid down in Ex parte Trevette, supra, rather than the principles of Ex parte Kilbourn et al., 122 O. G. 737, 1915 C. D. 40, were controlling.
It is regrettable, in view of the importance of the issue, that the board failed to make any> mention of the applicability of the doctrines of these two cases, particularly in view of the unsettled practice of the Patent Office in relation to this subject matter as is discussed hereinafter.
Appellant here has stressed with great force his contention that Ex parte Trevette, supra, is not controlling and that Ex parte Kilbourn et al., supra, and other decisions and principles of law are controlling.
This brings us to a careful consideration of the two above-cited authorities, and several others.
The Trevette case, the decision by Moore, Acting Commissioner of Patents, is an important one. It involved a question in some respects similar to the one involved here but evidently, judging from the language used, it turned upon questions essentially different from those presented by this appeal.
There only the method of stitching signatures was involved. It was held that the invention rested in the stitched .article for which the applicant had presented no claims. The Commissioner there held that there was nothing inventive in the method of stitching because the method claims stated “nothing more than the necessary or obvious manner of effecting the product” (italics supplied) and that therefore they were not patentable since they did not state the real invention. The large portion of the opinion is devoted to the proposition that it was the duty of the Patent. Office to permit the applicant who had described his invention in the wrong form of claim to substitute article claims which properly defined the invention.
There (not so here) no article claims were presented or allowed. There, method claims, defining the inventive article only were presented. Commissioner Moore, in the Trevette case, had under consideration solely the patentability of method claims when not associated with any other'character of claims in an application. It is true that *1125 implicit in that decision is a holding that the only thing patentable was the article itself, because he concluded that the method was only “the necessary and obvious maimer of effecting the product.” He necessarily meant that the necessary and obvious manner defined by the method claims was the only method by which the article could be produced and it seems that that was true in that case.
It would probably be sufficient on this most important issue to rest decision of the case here with the statement that the holding in the-Trevette case is not applicable here for reasons already pointed out and for the further reason that in the instant case we differ with the examiner (the board said nothing about it) in his statement that the claims involve but “the obvious method.” He was of the opinion evidently that the tea bags involved could be made by only one method.. Even if this were true under the circumstances at bar we do not feel justified (for reasons more fully appearing hereinafter) in approving-the holding of the examiner as a principle of patent law applicable-in all cases involving this question.
We agree with the position of the appellant that the instant article-can be made by more than one method, and no speculation or specific disclosure seems to be required to justify this conclusion. All of the claims here, except possibly claim 1, call for a step of heat sealing the-marginal area of the closure portion to form a border flange. The second step is through-cutting, or, in some of the claims, weakening or perforating the structure in the middle portion of the flange; this takes place after the flange is formed by sealing. Appellant suggests that the method defined by the claims is the most practicable and economical means of producing the article and it is the method which he claims will so cheapen the production of the article as to meet the-real need of the art. He points out that the bag material may be first cut with the handle formed therewith and thereafter the same may be-folded about the tea and the application of the heat sealing step forming the flange and the part of the flange which becomes the handle-might subsequently take place. It is obvious that this would be a different method from that defined by the appealed claims. That it is a less economical method, as appellant states, we have no reason to doubt.
[3] Now, it is a well-settléd rule in patent law that a method claim,, though defining the method of the machine or its operation, is allowable in the same application with the machine claims if the thing accomplished by the machine could be done by another method or by hand. In re Ernst et al., 21 C. C. P. A. (Patents) 1235, 71 F. (2d) 169, 22 U. S. Pat. Q. 28; Ex parte Trevette, supra; In re McCurdy, 22 C. C. P. A. (Patents) 1140, 76 F. (2d) 400, 25 U. S. Pat. Q. 136.
In other words, if the machine performs a new, useful, inventive method, the party is entitled to method claims along with his machine claims not only because his method requires protection but because *1126 they are related inventions. The method of the operation of the machine may, in some instances, be inventive when considered independently of the. machine, or may be a related invention to that of the machine and allowable only as claims for a dependent invention in the same application as that of the machine. The claims for a method which depend upon a machine and which are allowable only .along with article claims in one application should never be measured, when their allowability is being considered, by the standard which would bfe required if they were in a separate application and for a separate and unrelated invention.
The same is obviously true where, as in a case like that at bar, the method of making an article, such as a tea bag, is not the only method which could be pursued to produce the article. It must be remembered that the holding in the Trevette case, involving a method claim where the invention rested in the article, was said to be a “corollary” to the proposition that a process which amounts to nothing more than the mere functioning of a machine is not patentable. In the Trevette case the process claims were the only claims presented and they were considered as an independent and separate invention.
There has been some misapplication of the Trevette doctrine in the Patent Office. It has been regarded, as in this case, as controlling in this kind of an issiie. It has not been followed in all instances, as will hereinafter appear and for reasons which we think are sound.
It is worthy of note that it is an unusual circumstance to find that the Trevette case has been cited at least a dozen times in the Patent Office but so far as we have been able to discover has never been involved in the decision of an issue in any court at any time — neither by our predecessor in this jurisdiction nor by us. In this court, in In re Stack 24 C. C. P. A. (Patents) 836, 87 F. (2d) 210, 32 USPQ 250, the case was mentioned as being referred to in the decision of the board but it was not discussed or considered in our decision.
Appellant’s contention here, as hereinbefore stated, is that the tribunals of the Patent Office should have followed the holding in the KiTbowrn case, supra, rather than that in the Trevette case, and to understand this contention it is necessary to state that in the KiTbourn case (decision by Newton, Assistant Commissioner of Patents, later Commissioner) there was more than one method of making the article and he stated that of course the claims should be allowed under these circumstances. But he also held that even if this were not true and the method claims did nothing more than to define the article and they were the only method of making it they should be allowable on the ground that patent applicants should be permitted a wide latitude in forms of expression to define their invention, since judicial tribunals and others concerned might differ as to the clearest and most definite way of defining the inventive article.
*1127 This first above-stated holding in the Kilbourn case has been followed in most instances in the Patent Office, and we think we may properly add that there is respectable authority supporting the conclusion that in certain cases where it is apparent that difficulty is encountered in defining 'the article invented and where method claims in the same application with allowable article claims serve the purpose of better defining the article than the article claims, and are intended to define nothing more than the article, such method claims should be allowed for that reason. Ex parte Heyman Rosenberg (PO Bd. App.), 10 U. S. Pat. Q. 1.
Cases involving the consideration of one or both of the two cases around which the chief controversy here revolves, the Trevette case and the Kilbourn case, are as follows: Ex parte Butterfield, (Comr. Pats.), 108 O. G. 795, 1904 C. D. 29; Ex parte Frank Grasso, (PO Bd. App.) 20 U. S. Pat. Q. 229; Ex parte Glaxton et al., (PO Bd. App.), 43 USPQ 361; Ex Parte Laskin, (PO Bd. App.) 54 USPQ 500; Ex parte Plass, (PO Bd. App.), 54 USPQ 504; Ex parte Wayne (PO Bd. App.) 59 USPQ 438; Ex parte Daiger (PO Bd., App.), 557 O. G. 586, 60 USPQ 65; Ex parte Seott (PO Bd. App.) 66 USPQ 371.
In view of our conclusion that the article as defined by the article claims may be made by more than one method and that the appealed claims (except claim 1) are true method claims and should be allowed in the instant application along with the article claims as a dependent invention^ it is unnecessary for us to further discuss the Kilbourn case or make any holding with respect to that portion of the decision which holds that method claims may be allowed upon the sole ground that they may be the best way of defining the article.
[4] From “Patentability and Validity,” Revise and Caesar, page 433, we quote that which is well-settled patent law:
An inventor is entitled to restate his inventive thought in different phraseology and with varying degrees of particularity a reasonable number of times. According to strict views, two distinct claims for substantially the same matter should not be allowed, yet out of regard for the variety of views among different legal tribunals as to the interpretation of claims and the difficulty of always correctly defining the invention, it has become the practice to permit the same invention to be defined in different ways a reasonable number of times.
This principle becomes important only in view of the argument of the Solicitor hereinafter quoted and the fact that in appellant’s application he presents nine method claims in defining different modifications of his inventive method.
The above quotation states the practice of the Patent Office with respect to the allowance of more than one claim in the same application to the same invention which are of the same breadth and cover the same subject matter but are couched in different language. The practice *1128 is certainly one to be commended as long as the rule relating to multiplicity is not violated and as long as claims are not couched in such language as to be misleading or intended to cover more than the real invention or to becloud a consideration of their patentability. Reasonable latitude of expression in the claims of a.n application should be permitted.
Counsel representing the Solicitor for the Patent Office, in his brief in this case, makes the following statement:
* * * it is submitted that tbis rule [Rule 41 of the Rules of Practice of the Patent Office] does not contemplate the presentation, in any application, of claims which are essentially the same, though expressed in different words, and this is true even though the claims in form fall within two of the statutory classes of invention.
We think this language is entirely too broad to properly reflect the law upon the question and we quote it because it might well be said that certain language used by this court in certain cases reflects this view. “Patentability and Validity,” supra, mentions this fact with the statement that “unfortunately the Court [this court] used language from which it might be inferred that two claims cannot be allowed unless they differ from each other in material respects.”
In In re Einstein, 18 C. C. P. A. (Patents) 885, 46 F. (2d) 373, 8 U. S. Pat. Q. 166, the court stated what the general principle of law is, without stating the exceptions to the rule which now are universally made. We there said:
Two distinct claims for the same substantial matter, differing only in non-essentials, can not both be sustained. Dececo Co. v. Gilchrist Co., 125 Fed. 293; In re Prescott, 51 App. D. C. 281, 278 Fed. 590; In re McConnell, 17 C. C. P. A. (Patents) 1139, 40 F. (2d) 567.
None of the cases cited, when considered in their entirety, sustains this statement. On the contrary, the Deeeeo Go. case is in effect the direct opposite. In that case is the following language:
While according to strict rules of law, two distinct claims for the same substantial matter, differing only in nonessentials, cannot both be sustained, yet, out of regard to the frailty of human methods of expression, and the variety of views among different legal judicial tribunals as to the construction of instruments of the character of letters patent, and conceding, also, the difficulty of always correctly defining what one’s invention really i§, the practice has become settled to allow the same substantial invention to be stated in different ways, very much as the same cause of action, or the same offense intended to be covered by indictment, are permitted to be propounded in different counts, with a general verdict on all of them.
The statement in the Einstein case was only part of the important statement in the Deeeeo Go. case.
Since the decision in that case this court has uniformly held that more than one claim for the same invention may be included in one *1129 application and the whole quéstion was thoroughly discussed ahd decided in In re Clarity 25 C. C. P. A. (Patents) 1317, 97 F. (2d) 628, 38 USPQ 139. There we said:
As we understand it, under the patent law and the prevailing Patent Office practice, an inventor, where it is difficult to express his invention in the form of claims, has the right to, and ordinarily for his own protection does, express the same invention in more than one claim. If by so doing he more clearly defines his invention and does not by undue multiplicity obscure the same, he is acting within the rights granted and the duties required by the patent laws.
' The method claims on appeal here were not rejected by the Patent Office on the ground of multiplicity or that appellant was not entitled to express the inventive concept of the method by employing different language though directed toward accomplishing the same purpose. The claims are not unduly multiplied, nor are they of such character as to render the application and the claims therein subject to the criticism that the real invention is beclouded and the purpose of the patent statute in requiring clarity of definition is being violated.
[5] It may be pointed out that claim 1, upon which is dependent claims 2 and 22, may be subjected to the objection that if it is regarded as defining only a method and not an article it is deficient insofar as it may be interpreted to be a single-step claim and not in proper form for defining a method. This conclusion must be reached if the phrase “each made with a sealed marginal enclosure forming a border flange” is not interpreted to be a step in the method. '
Since the other appealed claims, which we think are allowable, fully protect the method phase of appellant’s invention (In re Dann, 18 C. C. P. A. (Patents) 1031, 47 F. (2d) 356, 8 U. S. Pat. Q. 367), it is not deemed necessary to require allowance of claim 1 over the views of the board that it is not in proper form for a method claim.
Our holding as to claim 1 brings about the result of the same ground of rejection applying to claims 2 and 22, which are dependent on claim 1. As we understand the practice of the Patent Office in a case of this character, it is within the discretion of the Office to allow the applicant to select some other claim upon which to append such claims as 2 and 22. Of course it might be that appending something to an allowable claim would make the claim non-allowable because of aggregation or possibly other reasons. Therefore, with this suggestion, we affirm the action of the board in rejecting claims 2 apd 22 in their present form.
The decision of the board rejecting claims 1, 2, 12, 15 and 22 is affirmed, and its decision rejecting claims 3, 4, 5, 6, 7, 8 and 9, is reversed. ..

 This appeal was originally decided by this court qn March 4, 1946. Thereafter, the Solicitor for the Patent Office filed a petition for rehearing. The rehearing was granted June 7, 1946, for the purpose of permitting the court to revise certain language in its original opinion and to modify its original decision.