**Application of HIRSCHHORN.**
Patent Appeal No. 5334.

Court of Customs and Patent Appeals.
June 17, 1947.

490

BLAND, Associate Judge, dissenting.

———◆———

Louis Barnett, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'-CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting claims 9 to 13, inclusive, in appellant's application for a patent for tea balls and a method of making them, on the ground of misjoinder of invention.

Appellant's application originally contained thirteen claims, of which method claims 1 to 8, inclusive, were directed to methods of making tea balls, and claims 9 to 13, inclusive, were directed to the article. Division between those groups of claims was required by the Primary Examiner and approved by the Examiner of Classification and appellant elected to prosecute the method claims in his application, retaining the article claims in the case for purposes of appeal. The examiner finally rejected all the method claims as unpatentable over prior patents and finally rejected the article claims, 9 to 13, inclusive, for misjoinder of invention. The Board of Appeals affirmed those rejections except as to method claims 3 and 4, which were held to be patentable.

The instant appeal is limited to the rejection of claims 9 to 13, inclusive, on the ground of misjoinder of invention. Since this rejection depends upon the requirement of division between the article and method claims, the only issue to be determined here is whether or not the requirement of division was proper.

Claim 9 is representative of the article claims, and claim 3 is representative of the method claims. They read:

"9. As a new article of manufacture, a substantially flat and pillow-shaped tea-ball comprising a tea containing bag of previous sheet material formed of a filter layer base having a coated lamina of thermosetting 'partially fused' plastic on one side thereof and folded once upon itself with the coated lamina side in face to face relation, the fold constituting one side edge of the bag, said bag having an outwardly directed bottom seamed edge portion extending angularly from the lower end of said fold and also having another outwardly directed seamed edge portion extending angularly from the first mentioned seamed edge portion and toward said fold, said seamed edge portions being formed by pressure and heat sealing of fused contacting surfaces of said coated lamina to permanent adhesion for providing a border of substantial width to serve as a marginal brace for imparting to the bag rigidity along two dimensions of the bag, the bag having a pressed and heat sealed top closure seam to permanent adhesion, said rigified marginal edges maintaining the bag and contents in substantially flat pillow-shaped condition."

"3. The method of manufacturing infusion packages comprising the steps of folding a traveling strip of foraminous sheet material formed of a filter layer base coated on one side with an adhering porous 'partially fused' thermosetting plastic lamina along the mid portion throughout the length thereof with the coated lamina side in face to face relation; pressing and heat sealing for permanent adhesion the opposite contiguous edge portions together into a longitudinally extending seam and forming an elongated continuous tubular structure from said strip with said lamina covering the interior surface thereof; cutting successive unit sections off said tubular structure one by one at spaced distances from an open end thereof; pressing and heat sealing for permanent adhesion the contiguous edge portions along the cut of each unit section with said lamina in face to face relation and forming an outwardly extending crossed seam joining with said longitudinal seam to provide a bag structure for the package; filling each unit section bag structure with an essence containing product through the open end thereof; gathering the material at said open end; and pressing and heat sealing for permanent adhesion the gathered material to form a top closure joint."

■ Both the examiner and the board held that the articles called for by claims 9 to 13, inclusive, could be made by methods other than those called for by the method claims. Counsel for appellant does not dispute the correctness of that holding and the reasons of appeal here do not assign error with respect to it. Accordingly, that holding must be taken as correct. In re Burns, 83 F.2d 292, 23 C.C.P.A. (Patents) 1091.

■ This court has repeatedly held that if a claimed product can be made by methods other than those called for by the method claims, the product claims cover a different inventive act, and division is properly required. In re Wellman, 48 F.2d 926, 18 C.C.P.A. (Patents) 1214; In re Ferenci, 68 F.2d 737, 21 C.C.P.A. (Patents) 856; In re Pedersen, 73 F.2d 928, 22 C.C.P.A. (Patents) 788; In re Burns, supra; In re Smith, Jr., 127 F.2d 144, 145, 29 C.C.P.A. (Patents) 1011. The rule announced in those cases is stated in the case of In re Smith, supra, as follows:

"It is evident that, if the Patent Office tribunals are correct in their holding that the product claimed in the second group can be produced by methods other than those set forth in the first group, the requirement for division must be affirmed."

No reason is found for modifying this well-settled rule or for making an exception to it in the present case.

The decision of the Supreme Court of the United States in Steinmetz v. Allen, 192 U.S. 543, 24 S.Ct. 416, 418, 48 L.Ed. 555, merely held invalid an arbitrary rule of the United States Patent Office which provided, as stated in the decision, that " 'Claims for a machine and the process in the performance of which the machine is used must be presented in separate applications.' " The Court decided that the fact that claims related to different statutory classes of invention was not always a sufficient reason why they could not be included in a single application, but that

discretion should be exercised in each individual case in determining whether separate applications were necessary. The decision in that case is not in point here.

In the instant case the Patent Office tribunals considered the relationship between the method and article claims and held that they call for separate inventions, because the article claimed could be produced by methods other than that called for by the method claims in appellant's application; and that holding, as hereinbefore noted, is not disputed by counsel for appellant. The decision in the case of Steinmetz v. Allen, supra, is clearly not authority for the proposition that claims to a method and its product may always be included in one application.

The provision of Patent Office Rule 41, 35 U.S.C.A.Appendix, that "where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application" does not apply to the present situation. The product does not depend upon the claimed method since it may be made by other methods. Furthermore, the method and the product do not contribute to produce a single result but, on the contrary, the product itself is the result of appellant's method, but may be produced by other methods.

What the Patent Office may have done in other cases with respect to the claiming of a method and a product in a single application is, of course, not material here. In re Greider et al., 129 F.2d 568, 29 C.C.P.A. (Patents) 1079. The question must be determined in each case on its merits.

The Patent Office practice of "dual prosecution" by which claims of a single application are sometimes examined and acted upon in different divisions of the Patent Office has no bearing on the propriety of a requirement of division. This practice was initiated by the commissioner's "Notice" of October 7, 1941, which is found in the Manual of Patent Office Procedure by C. L. Wolcott (Ninth Edition) page 52. The first sentence of this "Notice" is as follows:

"Where an application, properly assigned to one division is found to contain one or more claims per se classifiable in one or more other divisions, which claims are not divisable inter se or from the claims which govern classification of the application in the first division, the application may be referred for examination and action in the several divisions concerned, in which it will have special status."

It is evident from this language that "dual prosecution" was not intended to modify, in any way, the practice of requiring division, but was merely designed to facilitate the handling of cases in which, although division could not properly be required, consideration of the application by two or more Patent Office Divisions was considered necessary.

Counsel for appellant argues that if the method and article claims were presented in separate applications, the question of double patenting might arise. As we pointed out in Re Wellman, supra, that question is not material in the consideration of a requirement of division.

Counsel for appellant also points out that, after the requirement of division had been submitted to and approved by the Examiner of Classification, he requested the Primary Examiner to resubmit the case to the Examiner of Classification for reconsideration in view of certain decisions of the Board of Appeals, and that the Primary Examiner failed to act upon this request. No rule has been cited by counsel for appellant which would require that such a resubmission be made, and no error is assigned in this connection in the reasons of appeal to this court. Moreover, the matter is one of Patent Office procedure, and is immaterial to the only issue presented here, namely, the propriety of the requirement of division.

It has been suggested that, since the Patent Office fees have been increased, the requirement that divisional applications be filed imposes an unreasonable burden on applicants. The fixing of filing fees, however, is a matter of Congressional fiscal policy and, of course, has no bearing on the issues in this case. See U.S.C.A., title 35, § 78.

■ We are of opinion that division between the method and article claims of appellant's application was properly required and that claims 9 to 13, inclusive, were properly rejected on the ground of misjoinder of invention.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.

BLAND, Associate Judge (dissenting).

Appellant in his application for a patent relating to tea balls and their method of manufacture submitted both method and article claims. The Examiner of the United States Patent Office required division between the method claims and the article claims and pending appeal the appellant elected to prosecute his method claims.

The examiner rejected all of the method claims, 1 to 8. Upon appeal to the Board of Appeals it allowed claims 3 and 4, reversing the examiner as to these claims. Claims 9 to 13, the article claims, were rejected upon the ground of misjoinder, that is to say, they were rejected for the reason that they could not be considered in the same application as were the method claims. Appellant has taken no appeal as to the remaining six method claims but in this appeal presents the sole question as to the board's approval of the examiner's rejection on the ground of misjoinder.

We must presume that invention rests in appellant's method since the board has found two of the method claims allowable. All parties seem to agree that the tea bags may be made by a process or processes other than that which is claimed. It is argued by the Solicitor for the Patent Office that where this kind of situation prevails division is proper between method and article claims even though the process claimed can produce only the claimed article. He cites In re Ferenci, 68 F.2d 737, 21 C.C.P.A. (Patents) 856, and several other decisions to the same effect, including In re Butler, 37 F.2d 623, 17 C.C.P.A. (Patents) 810. The appellant relies upon other authorities, and it must be conceded that there is much confusion resulting from inconsistent Patent Office actions and certain views expressed by the courts.

In Steinmetz v. Allen, 192 U.S. 543, 24 S.Ct. 416, 418, 48 L.Ed. 555, the question of division was before the Supreme Court. Division was required under rule 41 of the Patent Office which at that time read as follows:

"41. Two or more independent inventions cannot be claimed in one application; but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result, they may be claimed in one application.

"Claims for a machine and its product must be presented in separate applications.

"Claims for a machine and the process in the performance of which the machine is used must be presented in separate applications.

"Claims for a process and its product may be presented in the same application."

The Supreme Court took the position that there was no statutory law which necessarily precluded joinder of two or more inventions of any character in the same application but an exception was made by said rule 41 and that the making of such rule was not the exercise of discretion where the rule applied to all alike. The opinion pointed out that the Patent Office had not been consistent in its views regarding division of inventions and while the court apparently conceded that some discretion should be allowed to the Patent Office it held it could be abused and that rule 41 ignored "the differences which invoke discretion" and was an invalid regulation.

Subsequently rule 41 was amended and the pertinent portion of it is as follows:

"41. Two or more independent inventions can not be claimed in one application; but where several distinct inventions are dependent upon each other and mutually contribute to produce a single result they may be claimed in one application: * * *"

It will be noticed that the amended rule retains the language relating to "distinct"

and "dependent" inventions being permissible in a single application. It left out the three specified circumstances relating to the question, namely, the specific provisions for claims for a machine and its product and claims for a machine and process and the final provision that "claims for a process and its product may be presented in the same application." It would seem to be the proper construction of this rule, if it were a new question, to hold that a process and its product would be dependent or related inventions and should be so regarded under the rule in its amended form.

However, from the date of the amendment of rule 41 there has been utter confusion in the Patent Office in the application of the rule. Appellant has pointed out a few instances. In the record is a list of eighteen patents where claims for tea bags and the method of making them were allowed in the same application, and it is a matter of common knowledge (see In re Ferenci, supra), which is shown with great frequency in the records filed with this court, that the Patent Office ordinarily considers method claims along with article claims in the same application without any requirement for division. A recent decision to this effect by the Board of Appeals is Ex parte Irmscher, Appeal No. 49,871, March 1, 1945.

The Patent Office, by notice of October 7, 1941, greatly simplified the question we are discussing here by putting into practice what is known as "Dual Prosecution." An applicant, without division, may have his application submitted to more than one division and acted upon by more than one examiner and have his patent include claims passed upon by all the examiners. This seems to us to be a commendable practice, and although the instant case is not shown to be one in which two examiners would be called upon for examinations, it is a matter of some surprise that instead of requiring division the "Dual Prosecution" practice was not resorted to. See Wolcott, Manual of Patent Office Procedure, 9th Edition, 1947, p. 52; McCrady, Patent Office Practice, 2nd Edition, 1946, Sec. 123.

The Patent Office tribunals have made very confusing rulings and the reasons which have brought them to their respective conclusions are often wholly inconsistent with reasons elsewhere stated. For instance, in Ex parte Binda, 54 U.S.P.Q. 35, in 1941, the Board of Appeals, in a decision by Edinburg, Examiner in Chief, where division was required, reversed the examiner and said:

"Claims * * * stand rejected on the ground of misjoinder. These claims cover an article while other claims in the case cover a process. Comparing the process claims, such as allowed claim 21, with the article claims, it is believed that the process of claim 21 when carried out will necessarily produce the article defined by the article claims. Applicant so contends. He states that there is serious doubt that a Court would sustain separate patents on the process and the article. He argues that the inventions claimed here are so closely related that they should be claimed in a single patent. We believe that applicant in the present case has presented a well founded argument for not dividing the process claims from the article claims. They are no doubt so closely related that if separate patents were taken out on them the question of double patenting might be likely to arise. We will, therefore, not affirm the rejection on the ground of misjoinder."

In Application of Barnett, 155 F.2d 540, 544, 33 C.C.P.A. (Patents) 1119, the examiner, in a case quite similar to the one at bar, did not require division of the method claims from the article claims but rejected the method claims on the ground of no invention. A majority of the court reversed the examiner and allowed the claims. The question of division was not raised, and the minority of the court disagreed with the conclusion solely on the question of invention. It was obvious there, as it is in the instant case, that following the process would necessarily produce the article but if appellant's process is inventive it is so closely related to the article that it should be in the same application where there is less likelihood of appellant's article claims, if allowed, being re-

jected on the ground of double patenting or held invalid on the ground that the subject matter would not support two patents.

In Re Barnett, supra, which is the last expression of this court upon this question (and there was no division of sentiment in the court on the instant issue), we stated:

"Now, it is a well-settled rule in patent law that a method claim, though defining the method of the machine or its operation, is allowable in the same application with the machine claims if the thing accomplished by the machine could be done by another method or by hand. In re Ernst et al., 71 F.2d 169, 21 C.C.P.A. (Patents) 1235; Ex parte Trevette, supra, [97 O.G. 1173]; In re McCurdy, 76 F.2d 400, 22 C.C.P.A. (Patents) 1140.

"In other words, if the machine performs a new, useful, inventive method, the party is entitled to method claims along with his machine claims not only because his method requires protection but because they are related inventions. The method of the operation of the machine may, in some instances, be inventive when considered independently of the machine, or may be a related invention to that of the machine and allowable only as claims for a dependent invention in the same application as that of the machine. The claims for a method which depend upon a machine and which are allowable only along with article claims in one application should never be measured, when their allowability is being considered, by the standard which would be required if they were in a separate application and for a separate and unrelated invention."

Many cases could be cited in which the courts have pointed out the danger of granting more than one patent for a single inventive concept and have discouraged the multiplicity of patents. See Norden v. Spaulding, 24 App.D.C. 286, 1905 C.D. 588.

In Re Briede, 27 App.D.C. 298, 1906 C.D. 677, where the question of division was considered, the court said:

"They [the courts] do not look with favor upon the refinements of division which lead to many patents being issued for various improvements incorporated upon a single device. They are inclined to resolve all doubts as to whether more than one invention is embraced in one patent in favor of the patentee. Bennet v. Fowler, 8 Wall. 445, 19 L.Ed. 431.

"*We do not now recall an instance where a patent has been held void by a court of last resort for claiming more than one invention.* In such cases disclaimers have been permitted. * * *" [Italics ours.]

The books are full of cases where patents were declared invalid by reason of the fact that the invention involved could not support more than one patent.

It is interesting to note that in Steinmetz v. Allen, supra, the Assistant Attorney General, McReynolds, subsequently Justice McReynolds of the United States Supreme Court, in arguing the case for the Government, took the following position:

"Division is not required upon the ground that the patent covering two inventions, if granted, would be declared invalid. No question as to validity is involved, *since the courts have never declared a patent invalid because of the joinder of distinct inventions.* Division, therefore, involves no question of merits. Ex parte Yale, C.D. 1869, 110; Bennet v. Fowler, 8 Wall. 445, [19 L.Ed. 431]; Ex parte Medford, C.D. 1883, 95; O.G. 881." [Italics ours.]

Illustrative of the attitude of the Patent Office is the case of Ex parte Adams, 1903 C.D. 299. There Commissioner Allen said:

"So far as appears the process claimed necessarily results in the composition claimed, although it is probable that the composition might be produced by other processes. * * *

"When, therefore, an applicant presents claims covering subject-matters of invention which are so independent that each requires a distinct and independent search in order to determine its novelty, then clearly the applicant should be called upon to restrict the claims of his application to one of the inventions thus presented. When, however, the inventions though distinct are dependent upon each other and the field of search for all is the same as that for a single one, then ordinarily there is no reason for requiring division."

In other words, then, very much as now, the Patent Office, "to obtain more revenue" as was stated in Hogg v. Emerson, 47 U.S. 437, 6 How. 437, 12 L.Ed. 505, and to facilitate the work of the examiners on the theory of "one examination for one invention," made the question of division wholly dependent upon those considerations.

The Solicitor for the Patent Office argues that the patents to Salfisberg, Nos. 2,192,-605 and 2,195,740, were cited as showing that patents for tea bags and methods of making them are classified and examined in separate classes. A reading of the record discloses that the Salfisberg patents were cited as part of the prior art in rejecting claims 1 to 8. Other patents in the record cited by appellant show the exact opposite of the solicitor's contention. However, this fact is not important. We have frequently said that we have minimized the importance of classifications in the Patent Office and if its only reason in requiring division in cases like this is the mere fact that under the Patent Office set-up it is the practice to let more than one examiner consider the subject matter of applications this reason would not be sufficient. The appellant, however, points out that in several of the patents cited by the examiner in the rejection of the method claims on the prior art it is shown that there was no separate examination in different classification units.

In the instant case, the appellant, after division was required, earnestly sought to have the case resubmitted to the Classification Division so that the ruling on division therein might be considered in the light of more recent rulings (Ex parte Irmscher, Appeals Nos. 43,460 and 43,461) by the Board of Appeals, which rulings were favorable to appellant's position. Notwithstanding the fact that this request was repeated, it was wholly ignored. It is not difficult to understand why the case was not resubmitted to the Classification Division because, as before stated, there was such uncertainty in the tribunals of the Patent Office with respect to the proper ruling in this character of case that no one could predict what the holding would be.

Appellant has pointed out that the instant record shows that some of the tea ball art cited shows that the examiner in charge of the applications necessarily is obliged to search through the whole field of tea ball patents for both method and article, the effect of which argument is to show that it is not necessarily true that there must be an independent search made in different divisions, especially where the production of a machine to make the article is not in question.

It has been frequently pointed out in the decisions of the courts and the tribunals of the Patent Office that a division in close cases lays the inventor open to the danger of having his patent declared invalid and that when division is required his acquiescence to the ruling of the Patent Office does not cure the difficulties if the courts subsequently hold that all of the inventive concept should have been included in one patent instead of two.

The fees of the Patent Office have been raised recently and there is talk of another raise. Taking into consideration the increased cost fees in cases like the one at bar, the expense of litigation to protect one's rights, and the uncertainty of the whole situation, it makes a discouraging picture for inventors, particularly poor inventors.

This court and other courts have frequently held that each claim in a patent is a distinct invention but the mere fact that some claims are broad and some are narrow and therefore would be different inventions when the claims were sued upon does not mean that there is a separate application required for every claim.

If inventions are to be promoted and if inventors are to be encouraged and if the Patent Office tribunals or those responsible for rulings on questions like that at bar are to have the same definite standard before them in making such rulings, it seems imperative that this court, which fully realizes the importance of the question to every one concerned, should speak quite definitely on the subject. The question, of course, could be settled by a new and more specific rule, following in its specificity the suggestions and inferences to be drawn from the Steinmetz v. Allen case, supra. If the rule should specify the character of

related inventions that might be included in a single application as suggested by the said Steinmetz case, it would not leave open the question of construction as to what is a dependent invention. The question of course could be settled by legislation but the delay and uncertainty of obtaining such relief is, of course, obvious. So it seems that the courts should, as each occasion arises, clarify the issue as much as is possible.

There is, of course, good ground for having article claims and method claims in different applications. The article and method might not be invented at the same time or by the same person or might be wholly unrelated to each other and therefore obviously they should not be claimed together in the same patent.

Present rule 41, the first portion of which was not disapproved by the Supreme Court in the Steinmetz case, affirmatively grants the inventor the right to include inventions that are dependent upon each other ("related inventions") in the same application. If the method of making a paper tea bag and the bag itself are two inventions which are not related or dependent upon each other, I know of no instance in the Patent Office practice where division between the different classes of claims herein discussed should not be required. If the article can be made only by one method, the Patent Office, I think, ordinarily would be inclined to reject the method claims on the theory that the method was not inventive and was obvious after having examined the article; and if the method claims defined a method which was not exclusive and there are other methods of making the article, the Patent Office has at times, as in the instant case, ruled there must be a division, which subjects the inventor to a later ruling of double patenting. So it would follow that if these two lines of procedure were carried out in the manner which frequently occurs, no patent could contain claims for an article and at the same time claims for a method of making the article.

As the situation stands now the inventor goes into the Patent Office and accepts or resists division at his peril. He is confused and confounded by the decisions of the courts and the decisions of the Patent Office tribunals. He does not know how much money it is going to cost him to get his patent, nor how much litigation he will have to withstand if he is to protect his rights. If division is not accepted and he elects to prosecute one group of the claims and upon appeal division is held proper and therefore two patents might be granted, he finds himself, in the prosecution of the non-elected group, at a great disadvantage. It is then urged that he is extending his monopoly and so his claims are rejected on the theory that he has obtained all he was entitled to and the invention of the article is weighed against the invention of the method. Occasionally, as in the case of the Salfisberg patents, he is lucky enough to slip through with two patents, one for a method and one for an article. This was true even in a tea bag case notwithstanding the fact that the most general practice seems to be to allow method and article claims in the same application in this art.

The majority feel compelled to stick to the wording of our former decisions on this question as if a holding of this court were as changeless as the law of the Medes and the Persians. In most of those cases there was little consideration given to the importance of the issue and the Patent Office ruling was merely followed. The consequences of these rulings, their threat to the welfare of the patent system, and the inconsistencies of them which lead to the confusion of inventors, have never been thoroughly considered.

In the majority opinion the case of Steinmetz v. Allen, supra, is brushed off by a statement that it is no authority for holding that method and article claims should be included in the same application. In that case the Supreme Court held the rule, "Claims for a machine and its product must be presented in separate applications," invalid. If claims for a process and the performance of a machine that carries out the process should not be presented in separate applications, how is it possible to conclude that it is proper to say that claims for a process and the article that is made

by the process should be in separate applications?

The majority further state that what the Patent Office has done in other cases is not material here. It is material to the extent that it shows the utter confusion which prevails in the Patent Office on the question and the necessity for some guiding influence to be afforded.

I am sure the majority's suggestion as to the effect of the "Dual Prosecution" procedure in the Patent Office does not square with the views of the officials of the Patent Office, or of the bar, either.

Under the "Dual Prosecution" procedure, since both classes of claims are often passed upon at the same time by different examiners, the situation presented by this case does not arise. So again I point out that the "Dual Prosecution" procedure has helped to a great extent, notwithstanding what the majority say about it.

Increasing the revenues by obtaining more fees by requiring division (even where the same examiner passes on both classes of claims) obviously is the controlling influence in many divisional cases. The majority say that this matter has no bearing on the issues in this case. The motive for, and effect of, a Patent Office practice not authorized by statute and which should be outlawed is always a material matter for consideration, and the majority opinion is departing from the views of the Supreme Court when it arrives at such a conclusion, because the Supreme Court and other courts have taken cognizance of the fact that the desire for increasing the revenues was not sufficient justification for making an invalid rule. Hogg v. Emerson, supra.

Where two inventions are so closely related that separate considerations in separate applications bring about the results I have mentioned hereinbefore, it not only shows that the inventions are dependent and related, but it shows that the inventor's statutory rights are being thwarted when he is denied the right to include claims for both in the same application.

I think it is the duty of this court, regardless of what we have said or what other courts have said, and regardless of the confused state of the law on the question, to say that in cases like that at bar requirement for division is improper.

In my judgment, the decision of the board affirming the examiner's rejection of the appealed claims on the ground of misjoinder should be reversed.